# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| JOSEPH HOLZMEISTER,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | NO. C11-5159-JLR-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Joseph Holzmeister appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for an award of benefits.

## I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a twenty-nine year old man with an eleventh grade education. Administrative Record ("AR") at 31, 42, 196. In school, plaintiff was enrolled in a full range of special education classes since the second grade. AR at 196.

REPORT AND RECOMMENDATION - 1

Plaintiff has worked for short periods of time as a kitchen helper at several restaurants, and has also worked as a landscaper for four months in 2003. AR at 33, 42. With assistance, plaintiff cares for his four children, whose ages span from two months to six years old. AR at 12, 200. Plaintiff asserts that he is disabled due to "limited intellectual functioning, learning disorder, illiteracy, depression, anxiety, PTSD, Personal Disorder and migraine headaches." Dkt. 16 at 1 (citing AR at 150, 186, 191).

On June 22, 2005, plaintiff filed a claim for SSI and DIB benefits, which was denied. AR at 121-23. Plaintiff then reapplied for benefits on October 20, 2006, alleging an onset date of April 1, 2003. AR at 127-39. The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 15. Plaintiff requested a hearing which took place on May 20, 2009. AR at 28-67. On July 14, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 15-26. The Appeals Council denied plaintiff's review for review, AR at 3-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On March 3, 2011, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

IV. EVALUATING DISABILITY

As the claimant, Mr. Holzmeister bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in

any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d),

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On July 14, 2009, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2006.

2. The claimant has not engaged in substantial gainful activity since April 1, 2003, the alleged onset date.

3. The claimant has the following severe impairments: learning disability and depression.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full

range of work at all exertional levels but is limited to simple routine
tasks and to occasional contact with the public and coworkers.

6. The claimant has no past relevant work.

7. The claimant was born on XXXXX, 1980 and was 22 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.[2]

8. The claimant has a marginal education and is able to communicate in English.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2003 through the date of this decision.

AR at 17-25.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err by failing to find that plaintiff meets Listing 12.05(C)?

2. Did the ALJ err by failing to find that plaintiff's severe impairments included mental retardation and personality disorder at step two?

3. Did the ALJ err in evaluating the opinion of Brett Trowbridge, Ph.D.?

4. Did the ALJ err by failing to the opinions of the Department of Vocational Rehabilitation?

5. Did the ALJ err in evaluating the opinions of Jeff Bremer, Ph.D., and the State Agency reviewing physician?

6. Did the ALJ err in evaluating plaintiff's credibility?

7. Did the ALJ err in evaluating the lay witness evidence of plaintiff's wife?

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

Dkt. 16 at 12; Dkt. 17 at 2.

## VII. DISCUSSION

### A. The ALJ Erred by Finding that Plaintiff Did Not Meet Listing 12.05

Step three of the sequential evaluation process requires the ALJ to determine whether plaintiff's impairments meet or equal any of the listed impairments set forth in Appendix 1 to 20 C.F.R. Part 404, Subpart P. 20 C.F.R. §§ 404.1520(d), 416.920(d). The listings describe specific impairments in each of the body's major systems that are considered "severe enough to prevent a person from doing most gainful activity." 20 C.F.R. §§ 404.1525, 416.925(a). Severe impairments must be "permanent or expected to result in death," or must last or be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1525(a), 416.925(a). The ALJ's analysis at step three must rely only on medical evidence and not rely on age, education or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d); *see also Bates v. Barnhart*, 222 F.Supp.2d 1252, 1258 (D.Kan. 2002). To be found disabled at step three, plaintiff must prove that she meets or equals each of the characteristics of a listed impairment. 20 C.F.R. §§ 404.1525(a), 416.925(a); *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). A claimant who meets or equals a listing is presumed disabled at step three without further inquiry. 20 C.F.R. § 416.920(a)(4)(iii).

Plaintiff argues that the ALJ erred at step three by finding that his impairments did not meet the listing for mental retardation, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). *See* Dkt. 16 at 14; Dkt. 18 at 3-4. The regulations provide that "[t]he structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If [a claimant's]

impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria . . . [the] impairment meets the listing." 20 C.F.R. Pt. 404, Subpt. P. App. 1 at § 12.00(A). The 12.05(C) listing describes mental retardation as a condition characterized by

> significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before the age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70, and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P. App. 1 at § 12.05.

Thus, a 12.05(C) listing requires an ALJ to find that the plaintiff satisfies three elements: (1) a valid verbal, performance, or full scale IQ score of 60 through 70; (2) a physical or other mental impairment; and (3) subaverage general intellectual functioning with evidence of adaptive functioning deficits that manifested themselves before the age of 22.

       *1.*     *Plaintiff's Three IQ Scores of 70 and Below Satisfy the 12.05(C) Severity Requirement*

Plaintiff has completed several kinds of intelligence testing, including Wechsler Adult Intelligence Scale (WAIS-III) testing, on at least three occasions.[3] AR at 315-29, 350-54, 461-63. Specifically, on November 3, 1990, when plaintiff was sixteen years old and in the tenth grade at Tumwater High School, he was administered the Wechsler Intelligence Scale for Children-Revised. AR at 461. On that test, he scored a performance scale IQ of 91 and a full scale IQ of 78, but a verbal scale IQ of only 69. AR at 461. Based on these scores, Education

---

[3] The regulations indicate that broad based IQ tests such as the Wechsler series are the preferable test method. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c).

REPORT AND RECOMMENDATION - 8

Specialist Diana MacQuarrie recommended that plaintiff continue to receive "special education assistance in reading, math and written language." AR at 463. Ms. MacQuarrie also noted that at the time, plaintiff expressed a desire to "attend a vocational program following high school, and that he would like to be a truck driver . . . Joe has the skills to pursue these career interests." AR at 463.

On October 9, 2003, when plaintiff was twenty-three years old, he completed WAIS-III testing as part of a consultative psychological evaluation completed by Alysa A. Ruddell, Ph.D. AR at 315-29. At that time, he received a verbal IQ score of 71, a performance IQ score of 70, and a full scale IQ score of 68. AR at 319. Dr. Ruddell asserted that "Joe's WAIS scores fall in the Borderline (70-79) to Low (69 and below) ranges of intellectual functioning." AR at 319.

Finally, on August 1, 2005, when plaintiff was twenty-five years old, Dr. Bremer performed a psychological evaluation during which plaintiff received a full scale IQ score of 71, verbal IQ score of 74, and performance IQ score of 73 on the WAIS-III. AR at 353. Dr. Bremer concluded that plaintiff's "general level of intellectual functioning is solidly in the borderline range, as reflected by today's WAIS-III scores[.]" AR at 353. Dr. Bremer also concluded that plaintiff "presents as a moderately depressed, functionally illiterate, 25-year-old man of borderline intelligence who appropriately relies on others to complete paperwork and manage fiscal affairs." AR at 354. With respect to plaintiff's numerous unsuccessful efforts to obtain his GED, Dr. Bremer opined that plaintiff "is understandably frustrated by not being able to get a GED, though I doubt that regardless of the amount of resources, time, and motivation, he would not be able to earn a GED." AR at 354.

In his decision, the ALJ appears to have focused solely on plaintiff's IQ scores that were above Listing 12.05(C)'s requirement of a score of 70 or below. AR at 19. Specifically, with respect to Listing 12.05, the ALJ noted that "[t]he claimant has a learning disability but testing did not show findings that meet the criteria of listing 12.05." AR at 19. The ALJ then cited to Dr. Bremer's 2005 psychological evaluation. AR at 19. The ALJ did not cite to, or specifically acknowledge plaintiff's lower IQ scores of 68, 69, and 70 obtained in 1990 and 2003. In a different section of his opinion, however, the ALJ noted that "the record also includes results from multiple IQ tests, the most recent of which showed IQ scores ranging from 71 to 74 in 2005. School records indicate that, despite learning difficulties, post secondary education in a vocational training program and competitive employment were anticipated. However, the claimant dropped out of school and did not complete the twelfth grade." AR at 18.

Plaintiff contends that he "has a valid IQ score of less than 70, plus other impairments that further limit his ability to function, and therefore, meets the severity criteria of Listing 12.05(C)." Dkt. 18 at 3. Specifically, plaintiff argues that the ALJ erred by relying solely upon his 2005 WAIS-III testing, which did not reveal a verbal, performance, or full scale IQ of 60 through 70, to conclude that "testing did not show findings that meet the criteria of listing 12.05." *Id*. (citing AR at 19). Because the ALJ did not even mention plaintiff's IQ scores of 69 (tested at age sixteen), 68 (tested at age twenty-three), or 70 (tested at age twenty-three), plaintiff asserts that "it is impossible to ascertain whether the ALJ was even aware of those IQ scores or if he had any valid reason for rejecting them." *Id.* Thus, plaintiff argues that plaintiff's valid IQ scores of 68, 69, and 70 satisfy the IQ requirement of Listing 12.05(C).

1  The Commissioner argues that "the ALJ correctly noted that Plaintiff's most recent IQ
2  scores, all above 70, were inadequate to meet the requirements of Listing 12.05(C)." Dkt. 17
3  at 7. Specifically, the Commissioner asserts that the ALJ did not err in relying upon
4  "Plaintiff's IQ test scores as an adult, which were all above the Listing's requirement of a score
5  of 70 or below. More recent medical reports are more 'highly probative.'" *Id*. (citing
6  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2000).

Contrary to the Commissioner's contention, Listing 12.05(C) does not provide that any
qualifying IQ scores must have been obtained when the claimant has reached a certain age.
Furthermore, the fact that as a junior in high school plaintiff hoped to someday attend a
vocational training program and obtain competitive employment, when these hopes were
clearly not born out, is not a clear and convincing reason for the ALJ to discount plaintiff's
verbal IQ score of 69 obtained in 1990. AR at 461. In any event, plaintiff's performance IQ
score of 70 and full scale IQ score of 68 were obtained in 2003, when plaintiff was a twenty-
three year old adult. AR at 319.

Moreover, courts in the Ninth Circuit have held that where multiple or conflicting IQ
scores are available, the operative score for purposes of determining whether a claimant's
impairments meet or equal the 12.05 listing is the lowest "valid verbal, performance, or full
scale IQ" score the claimant has received. *See Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir.
1987) (providing that where a claimant took IQ tests in both 1982 and 1983, higher scores
obtained in 1983 did not render lower scores obtained in 1982 invalid for purposes of listing
12.05(C)); *Ray v. Chater*, 934 F. Supp. 347, 350 (N.D. Cal. 1996) (providing that "it can be
inferred that when multiple IQ scores are available the Regulations prefer the lowest score.").
*See also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c) ("In cases where more than one

IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."). As a result, plaintiff's verbal IQ score of 69 from 1990, performance IQ score of 70 from 2003, and full scale IQ score of 68 from 2003 constitute his operative IQ scores for purposes of listing 12.05(C).

The ALJ's failure to discuss these three IQ scores in conjunction with listing 12.05 was in error. AR at 19. As the ALJ has not provided any valid reason for rejecting these scores, plaintiff has satisfied the first prong of 12.05(C)'s severity requirement.

### 2. *Plaintiff Suffers from "An Additional and Significant Work-Related Limitation of Function"*

An impairment satisfies the second prong of section 12.05(C), and imposes "an additional and significant work-related limitation of function," when its impact on a claimant's ability to perform basic work activities is more than slight or minimal. *Fanning*, 827 F.2d at 633 (internal citations omitted). A step two finding of a severe impairment by the ALJ therefore satisfies this test. *Id.* at n.3 (emphasizing, however, that a specific severity finding is not required to satisfy this standard). *See also Frazier v. Astrue*, 2010 WL 3910331,*5 (E.D. Wash. 2010) ("[U]nder *Fanning* and the Regulations, the ALJ's step two finding that plaintiff's depressive disorder is severe, satisfies the second prong of Listing 12.05(C)[.]").

Plaintiff argues that he has satisfied the second prong of 12.05(C)'s severity requirement because he has other impairments, a learning disability and depression, which cause more than slight or minimal effect upon his ability to work as these impairments were found "severe" by the ALJ. Dkt. 16 at 14.[4] Plaintiff is correct. Here, the ALJ found that

---

[4] In fact, plaintiff asserts that his "learning disability, PTSD, depression, and migraine headaches . . . further limit his ability to function." Dkt. 16 at 14.

REPORT AND RECOMMENDATION - 12

plaintiff's learning disability and depression constituted severe mental impairments at step two of the sequential evaluation process. AR at 17. *See* 20 C.F.R. § 416.920(c) (providing that in order to be considered "severe," an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities. . . ."). The Commissioner does not dispute that plaintiff's learning disorder and depression constitute "additional and significant work-related limitation of function" that satisfies the second prong of 12.05(C). *See* Dkt. 17 at 6-8. Thus, plaintiff has satisfied both prongs of 12.05(C)'s severity requirement.

> *3. Plaintiff had Significant Subaverage General Intellectual Functioning and Deficits of Adaptive Functioning that Manifested Before Age 22*

In order to satisfy the diagnostic description of "mental retardation" in the introductory paragraph of listing 12.05, there must be evidence of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before the age of 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Several circuits, including the Ninth Circuit, have found IQ to be an important indicator of subaverage intellectual functioning. Additionally, when determining whether claimants demonstrate deficits in adaptive functioning, courts look to a variety of factors that focus on the claimant's ability to lead an independent life.

> a. Plaintiff's IQ Demonstrates Subaverage Intellectual Functioning Manifesting Before the Age of 22

Here, plaintiff's verbal IQ score of 69, obtained when plaintiff was sixteen years old and enrolled in the tenth grade at Tumwater High School, demonstrates that plaintiff was presumptively mentally retarded during his developmental years. AR at 461. As mentioned above, based on plaintiff's scores on the Wechsler Intelligence Scale for Children-Revised on

November 3, 1990, it was recommended that plaintiff continue to receive "special education assistance in reading, math and written language." AR at 463. In addition to plaintiff's IQ score from that period, the fact that he was enrolled in special education classes since the second grade and dropped out of high school is strong evidence that his impairment began before the end of the developmental period. *See Hernandez v. Astrue*, 380 Fed.Appx. 699, 701 (9th Cir. 2010) (citing evidence that a claimant "repeated fourth grade, received poor grades in school, and did not attend high school" as evidence that an impairment began during the developmental period). Moreover, the ALJ did not find that plaintiff's cognitive functioning had deteriorated over time. AR at 19. These facts constitute substantial evidence that plaintiff manifested "evidence of significantly subaverage intellectual functioning" during his developmental period.[5]

                b.        Plaintiff Demonstrated Deficits in Adaptive Functioning

When determining whether a claimant demonstrates "deficits in adaptive functioning," courts consider a variety of factors that focus on the claimant's ability to lead an independent life. As mentioned above, the *Hernandez* court cited a claimant's poor academic performance as evidence that an impairment began during the developmental period. *Hernandez*, 380 Fed.Appx. at 701. *See also Ware ex rel. v. Shalala*, 902 F. Supp. 1262, 1271 (E.D. Wash. 1995) (holding that a claimant's participation in special education classes can be indicative of deficits in adaptive functioning). Similarly, the Third and Eighth Circuits have found that a claimant's participation in special education, poor academic performance, and low-skilled work history imply evidence of deficits in adaptive functioning during the developmental

---

[5] Notably, the American Psychiatric Association also defines "[s]ignificantly subaverage intellectual functioning" as an "IQ of about 70 or below." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders (DSM IV)* 39 (4th ed. 1994).

period. *See Markle*, 324 F.3d at 189 (remanding for further development of these factors); *Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007). These factors are consistent with the Commissioner's comments on the listing requirements for 12.05(C), which indicates that 12.05(C) accommodates the American Psychiatric Association's analysis of mental retardation, which looks to an individual's ability to function academically, care for themselves, and live independently. 20 C.F.R. Pt. 404.

Plaintiff attended a full range of special education classes from the second grade through the eleventh grade, when he dropped out of high school. AR at 31. Plaintiff also testified that he has attempted to obtain his GED approximately five times, but "it was too difficult for me." AR at 31. As noted above, evaluating physicians have opined that as a result of his impairments, "regardless of the amount of resources, time, and motivation, he would not be able to earn a GED." AR at 354. Plaintiff cannot drive a car, and has never obtained a driver's license because he was unable to pass the written test. AR at 32-33. The ALJ found that plaintiff has "moderate difficulties" in social functioning, as he has "reported difficulty getting along with others at times, such as when he was working, and there is indication of difficulty with anger, frustration, and irritability at times." AR at 19. Plaintiff has also been unable to hold a job or perform in the workplace. For example, the ALJ found that plaintiff has no past relevant work, because plaintiff has only worked for a few months at a time. AR at 57. These facts constitute substantial evidence of plaintiff's adaptive functioning deficits, the final requirement of listing 12.05.

      *4.     A Diagnosis of Mental Retardation is Not Required by Listing 12.05*

The Commissioner argues that plaintiff does not meet listing 12.05(C) because plaintiff has not been formally diagnosed with mental retardation by any acceptable medical source, and

"a diagnosis of mental retardation is a prerequisite to meeting or equaling Listing 12.05, regardless of the severity shown by IQ scores for part C of Listing 12.05." Dkt. 17 at 7-8 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). However, the authority cited by the Commissioner in support of his argument is inapposite.

As discussed above, a claimant must only satisfy three elements in order to meet listing 12.05(C): (1) a single valid verbal, performance, or full scale IQ score of 60 through 70; (2) a physical or other mental impairment; and (3) subaverage general intellectual functioning with evidence of adaptive functioning deficits that manifested themselves before the age of 22. Plaintiff has satisfied these elements. Furthermore, recent authority has specifically held that a diagnosis of mental retardation is not required to meet listing 12.05. *See Frazier v. Astrue*, 2010 WL 3910331, *4 (E.D. Wash. 2010) (holding that "[t]here is no requirement for a formal diagnosis of 'mental retardation'" to meet listing 12.05(C)). *See also Christner*, 498 F.3d 790, 793 (8th Cir. 2007) ("[W]e have specifically held that a formal diagnosis of mental retardation is not required to fall within the confines of section 12.05. Thus, it is clear that claimants need only meet the listing requirements stated in section 12.05."); *Lewis v. Astrue*, 2008 WL 191415, *5-7 (N.D. Cal. 2008) (holding that "the ALJ erred by holding that claimant had to make a showing of mental retardation beyond that which is required by Listing 12.05" by also requiring evidence of a diagnosis of mental retardation).

The lack of a diagnosis of mental retardation, therefore, has no bearing on whether plaintiff's impairments meet listing 12.05(C). Together, plaintiff's three IQ scores of 70 and below, educational history, social functioning, and work history demonstrate that he meets the diagnostic requirements of the 12.05(C) listing for mental retardation. The ALJ erred when he determined that plaintiff was not disabled.

B. <u>Remand for Award of Benefits is the Appropriate Relief</u>

It is unnecessary to address plaintiff's remaining assignments of error. Remand is required. As noted above, a remand for award of benefits is appropriate when (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence. *See Massanari*, 298 F.3d at 1076-77. Here, the ALJ failed to mention, let alone provide clear and convincing evidence, to discount plaintiff's three valid IQ scores of 70 and below. As a result, there are no outstanding issues that must be resolved, and the ALJ would be required to find plaintiff disabled because his impairments meet listing 12.05(C). There is nothing to be gained by sending this matter back for another hearing. Accordingly, the undersigned recommends that this matter be remanded with instructions to award benefits.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for the purpose of awarding benefits. A proposed order accompanies this Report and Recommendation.

DATED this 19th day of October, 2011.

JAMES P. DONOHUE
United States Magistrate Judge